IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DARRIN MALSACK,                       )
                                        )
         Plaintiff,               )
                                        )     CIVIL ACTION
vs.                                  )
                                        )     Case No. 2:26-CV-00340
NRF VIII - GREENFIELD, LLC,     )
                                        )
         Defendant.           )

## COMPLAINT

COMES NOW, DARRIN MALSACK, by and through the undersigned counsel, and files this, his Complaint against Defendant, NRF VIII - GREENFIELD, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's NRF VIII - GREENFIELD, LLC, failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff DARRIN MALSACK (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Milwaukee, Wisconsin, (Milwaukee County).

3. Plaintiff is disabled as defined by the ADA.

1

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, NRF VIII - GREENFIELD, LLC (hereinafter "NRF VIII - GREENFIELD, LLC") is a foreign limited liability company that transacts business in the State of Wisconsin and within this judicial district.

8.      Defendant, NRF VIII - GREENFIELD, LLC, may be properly served with process via its registered agent for service, to wit: c/o Corporation Service Company, Registered Agent, 33 East Main Street, Suite 610, Madison, WI 53703.

## FACTUAL ALLEGATIONS

9.      On or about July 18, 2025, Plaintiff attempted to be a customer at "Warpstorm Games & Lounge," a gaming store located at 6120 W. Layton Avenue, Greenfield, WI 53220,

2

referenced herein as "Warpstorm." *See* attached receipt as Exhibit 1. The July 18, 2025, visit to Warpstorm was Plaintiff's second visit to the Property as a customer.

10.     Before filing this lawsuit, Plaintiff travelled to the Property again to be a customer but when he arrived, he was reminded of the barriers to access currently present which caused great difficulties for him accessing the units and was deterred from leaving his vehicle and patronizing Warpstorm again due to the barriers present.

11.     Defendant, NRF VIII - GREENFIELD, LLC, is the owner or co-owner of the real property and improvements that Warpstorm is situated upon and that is the subject of this action, referenced herein as the "Property."

12.     Defendant, NRF VIII - GREENFIELD, LLC, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, NRF VIII - GREENFIELD, LLC, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

13.     Plaintiff's access to Warpstorm, located at 6120 W. Layton Avenue, Greenfield, WI 53220, Milwaukee County Property Appraiser's property identification number 6030198002 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14.     Plaintiff lives less than 4 miles from the Property.

15.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

16.     Plaintiff has visited the Property three times before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer of Warpstorm, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

17.     Plaintiff intends on revisiting the Property as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18.     Plaintiff travelled to the Property as a customer three times before, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

19.     Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as,

4

for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20. Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

21. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

22. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

5

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.     The Property is a public accommodation and service establishment.

27.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

6

28.     Public accommodations were required to conform to these regulations by January

26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of

$500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

29.     The Property must be, but is not, in compliance with the ADA and ADAAG.

30.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in

his capacity as a customer at the Property and as an independent advocate for the disabled, but

could not fully do so because of his disabilities resulting from the physical barriers to access,

dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his

access to the Property and/or the goods, services, facilities, privileges, advantages and/or

accommodations offered therein, including those barriers, conditions and ADA violations more

specifically set forth in this Complaint.

31.     Plaintiff intends to visit the Property again as a customer and as an independent

advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges,

advantages and/or accommodations commonly offered at the Property, but will be unable to fully

do so because of his disability and the physical barriers to access, dangerous conditions and

ADA violations that exist at the Property that preclude and/or limit his access to the Property

and/or the goods, services, facilities, privileges, advantages and/or accommodations offered

therein, including those barriers, conditions and ADA violations more specifically set forth in

this Complaint.

32.     Defendant, NRF VIII - GREENFIELD, LLC, has discriminated against Plaintiff

(and others with disabilities) by denying his access to, and full and equal enjoyment of the goods,

services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited

by, and by failing to remove architectural barriers as required by, 42 U.S.C. §

7

12182(b)(2)(A)(iv).

33.     Defendant, NRF VIII - GREENFIELD, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, NRF VIII - GREENFIELD, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

i.      In front of Broadscape Disability Services, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

ii.     In front of Broadscape Disability Services, leading from the two accessible parking spaces, there are openings in the ground surfaces of the accessible route with widths exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

8

iii.   In front of Broadscape Disability Services, leading from the two accessible parking spaces, there are vertical rises in excess of ¼ inch along the accessible route in violation of Section 303.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property as vertical rise in excess of ¼ inch may cause Plaintiff's wheelchair to snag on the vertical rise and tip over.

iv.   In front of Unit 6150, the two accessible parking spaces, and associated access aisle, have a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increase the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

v.   In front of Unit 6150, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

vi.   In front of Unit 6150, there is an opening going all the way across the ground surfaces of the accessible ramp with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Sections 302.3 and 405.4 of the 2010 ADAAG Standards.

9

vii. In front of Unit 6150, due to the presence of the accessible ramp and the configuration of the accessible route leading from the accessible parking spaces, the surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

viii. Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route causing the exterior access route to routinely have clear widths below the minimum thirty-six (36") inch requirement specified by Section 403.5.1 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

ix. Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route as a result, in violation of Section 502.7 of the 2010 ADAAG Standards, parking spaces are not properly designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. This barrier to access would

make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

x. At Sun Tan City, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

xi. At Sun Tan City, the door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent wall or protruding object in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door. The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

xii. Between Armed Forces Career Center and Sun Tan City, the access aisle servicing the two accessible parking spaces has an opening running the length of the access aisle with a width in excess of ½ inch in violation of Sections

302.3 and 502.4 of the 2010 ADAAG standards. This barrier to access could cause the wheel of Plaintiff's wheelchair to get lodged in the opening causing difficulty and risk having the wheelchair tip over in a struggle to get removed from the gap.

xiii. Between Armed Forces Career Center and Sun Tan City, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xiv. Between Armed Forces Career Center and Sun Tan City, due to the presence of the accessible ramp and the configuration of the accessible route leading from the accessible parking spaces, the surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

xv. Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

35. The violations enumerated above are not a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property. Due to the barriers to access, Plaintiff was completely barred from entering the Property as a customer and when he returns within six months or sooner after the barriers to access are removed.

12

36.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.     According to the Milwaukee County Property Appraiser, the Property was built in 1994.  As such, any modifications to correct the barriers to access shall be required to meet either the 1991 ADAAG Standards or the 2010 ADAAG Standards.  The readily achievable standard does not apply.

38.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

39.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, NRF VIII - GREENFIELD, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

40.     Plaintiff's requested relief serves the public interest.

41.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, NRF VIII - GREENFIELD, LLC.

42.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, NRF VIII - GREENFIELD, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

43.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, NRF VIII - GREENFIELD, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

13

(a)      That the Court find Defendant, NRF VIII - GREENFIELD, LLC, in violation of the ADA and ADAAG;

(b)      That the Court issue a permanent injunction enjoining Defendant, NRF VIII - GREENFIELD, LLC, from continuing their discriminatory practices;

(c)      That the Court issue an Order requiring Defendant, NRF VIII - GREENFIELD, LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)      That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)      That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: March 2, 2026.            Respectfully submitted,

           Law Offices of
           THE SCHAPIRO LAW GROUP, P.L.

           /s/  Douglas S. Schapiro
           Douglas S. Schapiro, Esq.
           State Bar No. 54538FL
           The Schapiro Law Group, P.L.
           7301-A W. Palmetto Park Rd., #100A
           Boca Raton, FL 33433
           Tel: (561) 807-7388
           Email: schapiro@schapirolawgroup.com